UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20027-CR-SEITZ/SIMONTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROLLIN CHERY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Presently pending before this Court is Defendant Rollin Chery's Motion to Suppress (DE # 22, filed 3/15/12). The Honorable Patricia A. Seitz, United States District Judge, has referred this motion to the undersigned United States Magistrate Judge (DE # 23). The Government has responded in opposition (DE # 29), and the Defendant has replied (DE # 33). An evidentiary hearing was held on April 4, 2012. At the conclusion of the hearing, the undersigned announced her findings and conclusions on the record, and advised the parties that a Report and Recommendation would be entered which recommended that the Motion be denied. The oral rulings made at the hearing are incorporated by reference in this Report. For the reasons stated below, it is hereby **RECOMMENDED** that the Motion to Suppress be **DENIED**.

    I.    **BACKGROUND**

Defendant Rollin Chery is charged in a three-count Indictment with possessing with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 1); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 2); and using and carrying a firearm during and in relation to the drug trafficking crime alleged in Count 1, and possessing a firearm in furtherance of that drug trafficking

crime, in violation of 18 U.S.C. § 924(c) (Count 3). According to the Indictment, these offenses occurred on or about May 19, 2011 (DE # 1). As described in more detail below in the Findings of Fact, the evidence which forms the basis for these charges was seized from the ground in an area where the Defendant was first observed (specifically, a clear plastic bag containing smaller baggies of crack and powder cocaine), as well as from the person of the Defendant when he was arrested inside a residence into which he fled as the police approached him (specifically, a loaded Glock pistol, a clear baggie with loose cocaine, and approximately $500 in cash).

## II.    THE MOTION TO SUPPRESS

As asserted in the Defendant's Motion to Suppress, and clarified in his Reply and at the evidentiary hearing, the Defendant seeks to suppress the evidence that was seized from his person following his arrest inside apartment number 3, located at 70 N.W. 76th Street, Miami, Florida. He alleged that his arrest was not supported by probable cause since, contrary to the Government's contentions, he was not outside of the apartment at the time the Government contends he was observed conducting hand to hand sales of narcotics. The Defendant contends that the police entered the apartment where he was found based solely upon a tip that narcotics activity was occurring inside that apartment, and arrested the Defendant without probable cause to believe he had committed a crime.

In its Response, the Government first contended that the Defendant, as a guest, lacked a reasonable expectation of privacy in the apartment, and therefore could not challenge the warrantless entry into the apartment. The Defendant replied that he was not challenging the entry into the apartment; that his challenge was based solely on the lack of probable cause to arrest him. Therefore, this Report and Recommendation does

not further address the legality of the warrantless entry into the apartment.[1]

The Government next contended that the Motion should be denied without an evidentiary hearing based upon the failure of the Defendant to set forth more than a conclusory allegation that the police lacked probable cause to arrest him. The Defendant remedied any deficiency in this regard in his Reply; and, therefore an evidentiary hearing was held.

Finally, the Government asserted that the arrest of the Defendant was supported by probable cause since it was based upon observations of the Defendant conducting hand to hand sales of narcotics, as well as the activity of the Defendant in discarding a clear plastic bag containing numerous small baggies of drugs and running into the residence when approached by the police.

At the evidentiary hearing, defense counsel acknowledged that this case involved a determination of the credibility of the police officers, and that if the Court believed that the officers had made the observations described above, there was probable cause to support the arrest of the Defendant, and that the search incident to this arrest was lawful. Defense counsel sought, however, to discredit the officers' testimony through cross-examination and by eliciting testimony from police officers who were part of the investigation that day, but who were not called as witnesses by the Government.

### III.   FINDINGS OF FACT

At the evidentiary hearing, the Government elicited the testimony of City of Miami

---

[1] The undersigned notes, however, that if it had been challenged, it is clear from the facts as set forth below that the police properly pursued the Defendant into the residence after he fled there when the police approached him following observations of the Defendant's hand to hand sales of narcotics, and based upon the retrieval of a bag containing cocaine and crack cocaine which the Defendant discarded as he fled. *United States v. Santana*, 427 U.S. 38, 43 (1976); *United States v. Echevarria*, 238 Fed. App'x 424 (11th Cir. 2007).

police officers Dairon Williams and Mark Ashton, and introduced into evidence photographs of the area where the arrest occurred, as well as an audio recording of radio transmissions concerning the observations made and the decision to arrest the Defendant.  Officers Williams and Ashton had a good memory of the events, and were forthright and credible in their testimony.  To support its claim that the arrest was unlawful, the defense relied upon its cross-examination of the government witnesses, and elicited testimony from the other police officers on the scene that day, specifically, Officers Joseph Byars, Ruby Noel, John Giordano, and Blake Weinger.  The officers called as witnesses by the defense were more peripherally involved in the arrest, and did not have as good a recall as Officers Williams and Ashton.  Their testimony, however, did not contradict the testimony of Officers Williams and Ashton in any material respect.  The testimony of all of the officers was consistent with respect to the material facts relied upon by the Government to establish probable cause for the arrest.  All of the officers candidly admitted when they could not recall certain details of the events that transpired that day, and did not attempt to embellish their testimony.  The minor discrepancies, such as the identity of the person who returned to Officer Ashton a radio he dropped while pursuing the Defendant, and whether the Defendant "dropped" or "tossed" a bag containing cocaine as he fled into an apartment, did not undercut the credibility of the testimony as a whole.  In addition, the testimony of the officers regarding the events which led to the arrest was corroborated by the contemporaneously recorded radio transmissions, which were admitted into evidence as Government Exhibit 2. Moreover, there is no evidence which supports the Defendant's allegation that he was never outside the apartment preceding his arrest.

Based upon the evidence as a whole, and considering the demeanor of the

witnesses, their ability to recall the events, and their respective roles in the investigation, the undersigned Magistrate Judge credits the testimony of the police officers, and makes the following findings of fact.

At the time of the events relevant to this case, Officers Dairon Williams, Mark Ashton, Joseph Byars, Ruby Noel, John Giordano, and Blake Weinger were all City of Miami police officers assigned to the Little Haiti Problem Solving Team.  The function of that team was to address the complaints and concerns of the persons residing in that area.  This team was involved in the arrest of the Defendant, Rollin Chery, at approximately 5:00 p.m. on May 19, 2011, on state charges that subsequently became the basis for the presently pending Indictment.  The arrest occurred at 70 N.W. 76th St., in apartment 3 of the triplex complex at that address.

Approximately one year before the arrest of Mr. Chery, members of the team had been involved in the arrest of three unrelated persons in the same apartment for narcotics related offenses; and, approximately one month before the arrest of Mr. Chery the police had received citizen complaints about narcotics sales occurring at that location.  Based upon that information, Officer Williams periodically drove past the triplex in his unmarked police car to see if he could observe any such activity.  He had driven past a few times prior to May 19th, and had not seen any activity.  On May 19th, however, Officer Williams saw the Defendant outside of apartment number 3, with another person, as he drove past in his unmarked car.  Officer Williams then parked in the parking area of an apartment complex across the street and watched the activity.  He saw the Defendant take a small object from a clear plastic bag and give it to the other person in exchange for currency.  Based upon his 15 years of experience as a police officer involved in narcotics investigations,  Officer Williams determined that this was a

hand to hand sale of drugs.

At the time, other members of the team, including Officer Ashton, were in the vicinity of Officer Williams, although not at that location.  Therefore, Officer Williams used his radio to advise Officer Ashton that he had seen a drug transaction so that Officer Ashton could approach the Defendant.  Officer Williams then used his cell phone to call Officer Ashton and provide additional information to Officer Ashton regarding the location and the best way to approach the Defendant.  Officer Williams requested the assistance from Officer Ashton because they had worked together for years and Officer Ashton was the most experienced officer on the team.  Almost immediately thereafter, another individual approached the Defendant and a similar transaction occurred. Neither of the purchasers observed by Officer Williams were followed or arrested.

Officer Ashton has been a police officer for 14 years and has been involved in hundreds of narcotics related arrests.  Officer Ashton arrived at the location within a few minutes of his conversation with Officer Williams.  Other members of the team arrived immediately behind Officer Ashton.  They drove marked police cars, but parked away from the apartment so that the Defendant would not be able to see the police cars. Officer Ashton approached the Defendant from the side of the building, wearing a clearly marked police T-shirt.  When the Defendant saw Officer Ashton, he discarded a clear plastic bag and ran into apartment number 3 of the triplex.  Officer Ashton ran after the Defendant, stopping to pick up a clear plastic bag which contained approximately 80 smaller baggies of what Officer Ashton recognized as rock and powder cocaine.

Officer Ashton followed the Defendant into the apartment, pushing the door open as he entered.  Officer Weinger followed Officer Ashton into the apartment.  The apartment was very small, consisting of a living area, kitchen, bathroom, and bedroom.

**There was nobody in the living area, so Officer Ashton went into the bedroom where he saw the Defendant lying on the floor next to a bed, and another individual, Pedro Roger, seated on the bed, next to an open shoebox containing approximately 300 baggies of marijuana.  Officer Ashton arrested the Defendant based upon the cocaine contained in the plastic bag he had seized in the yard.   A search of the Defendant revealed a Glock pistol in his waistband, loose cocaine in a clear bag in his left pocket, and $500.00 in his front right pocket.  Pedro Roger was arrested by Officer Byars, who had followed Officer Weinger and Officer Ashton into the apartment.  Officer Weinger then transported both Mr. Chery and Mr. Roger to the police station.[2]**

**IV.   LEGAL ANALYSIS**

**A.  Framework for Analysis**

**It is well-settled that to be constitutionally valid, an arrest must be supported by probable cause to believe that the suspect has committed an offense;** *i.e.* **at the time the defendant was arrested by the police the "facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant]  had committed or was committing an  offense."**  *Beck v. Ohio*, **379 U.S. 89, 91 (1964).  In** *Illinois v. Gates*, **462 U.S. 213, 231-32 (1983), the United States Supreme Court held that a determination of probable cause must be based on an evaluation of the totality of the circumstances, and set forth the following guidance:**

> **Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception."** *Brinegar v. United States*, **338 U.S. 160, 176 (1949).**

---

[2]  The other officers who testified at the hearing and who were present at the scene acted in a supporting role, and were not directly involved in the arrest of Defendant Chery.

> "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*, at 175.  Our observation in *United States v. Cortez*, 449 U.S. 411, 418 (1981), regarding "particularized suspicion," is also applicable to the probable cause standard:
>
>> The process does not deal with hard certainties, but with probabilities.  Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
>>
>> As these comments illustrate, probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules.

In deciding whether there is probable cause to arrest, the court may examine the collective knowledge of law enforcement officers involved in the investigation.  *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985).

   B.  <u>Conclusions of Law</u>

At the outset, the undersigned notes that at the conclusion of the hearing, the defense conceded that if the Court believed the testimony of Officer Williams that he had observed the hand to hand transactions, and the testimony of Officer Ashton that he retrieved the plastic bag containing 80 baggies of rock and powder cocaine discarded by the Defendant, there was probable cause to arrest the Defendant, and that the Motion to Suppress should be denied.

Apart from the above concession, applying the legal principles stated above, the

**totality of the circumstances establishes that there was probable cause to arrest Mr. Chery for possession with intent to distribute cocaine.  The undersigned finds and concludes that based upon the observations of Officer Williams, an experienced narcotics officer, there was probable cause to believe that the Defendant had engaged in hand to hand sales of illegal drugs; and, based upon the way in which the two drug transactions occurred as well as the tip regarding drug transactions occurring at that location, that the Defendant had in his possession additional drugs at the time that he was initially approached by Officer Ashton, another experienced narcotics officer.  Even assuming that the observations of hand to hand sales did not rise to the level of probable cause, the evidence of the Defendant's criminal activity increased to that level when Officer Ashton saw the Defendant flee and discard a clear plastic baggie containing numerous small baggies of what Officer Ashton recognized to be cocaine.  Thus, it was constitutionally permissible for Officer Ashton to arrest the Defendant for possession with intent to distribute cocaine, to search him incident to that arrest, and to seize the cocaine, firearm, and money which was found on the person of the Defendant.[3]**

**Therefore, it is hereby**

**RECOMMENDED that the Motion to Suppress (DE # 22) be DENIED.**

**The parties will have fourteen days from the date of service of this Report and Recommendation within which to file written objections, if any, for consideration by the**

---

[3] **The only issue presented by the Defendant is the existence of probable cause to support his arrest, and therefore it is not necessary to engage in further legal analysis concerning the seizure of the evidence.  Specifically, as previously stated, the Defendant concedes that he lacked a reasonable expectation of privacy in the residence into which he fled, and does not challenge the entry of Officer Ashton into the residence to arrest him.  In addition, he has not independently challenged the propriety of the search incident to arrest, and the seizure of the drugs, firearm and cash which was on his person.**

**Honorable Patricia A. Seitz, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.** *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988)*; Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in chambers in Miami, Florida on this 18th day of April, 2012.

*[signature]*

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

**Copies furnished via CM/ECF to:**
The Honorable Patricia A. Seitz,
   United States District Judge
All counsel of record